HARTZ, Circuit Judge,
dissenting.
I respectfully dissent. We should not be reviewing for vagueness the protective covenants (the Covenants) of the Ogden Commercial and Industrial Park. Under Supreme Court precedents, First Amendment vagueness review is suitable only for laws having a particular nexus to speech. That nexus is absent here. First Amendment interests can be sufficiently safeguarded by means of as-applied challenges to specific decisions taken under the Covenants. Because Tool Box has raised no such challenge, we should affirm the district court’s entry of summary judgment.
It will be useful to review the pertinent facts. Ogden City is the original owner of the land now occupied by the Commercial Park. The City has sold much, if not all, of the land in the park, but has subjected the land to some protective covenants. As stated in the Covenants, the park was established to be a “wholesome environment” for “selective manufacturing and marketing enterprises.” Allowed uses include “manufacturing, fabrication, wholesale and distribution purposes, offices, service facilities for the Industrial Park occupants, and similar uses which create benefits to local commerce and the development for additional employment opportunities.” Although the Covenants created a Review Board to oversee their enforcement, the mayor has ultimate authority. For simplicity, I will refer to the mayor as the decisionmaker.
Totally apart from the Covenants, the City has enacted an ordinance directed at sexually oriented businesses (SOBs). SOBs are limited to areas of the City with certain zoning classifications. The zoning of the Commercial Park would permit SOBs. Even without the park acreage, however, SOBs are permitted on 5.19% of the City’s area.
Tool Box sought to open a nude-dancing establishment within the Commercial Park. There were no zoning impediments, but the mayor decided that the business would violate the Covenants because it would be inconsistent with the park’s purpose of creating “a wholesome environment for selective manufacturing, fabrication and other allowed uses.” As a result, Tool Box was denied a building permit. At the time of the denial, three SOBs were operating in the City. Apparently, Tool Box later found a site elsewhere in town.
*1182 Although the majority opinion addresses whether Tool Box has standing and whether the mayor’s decision constituted state action, I will not discuss either issue. Neither was raised in the parties’ appellate briefs; and there is no question that we have jurisdiction. I therefore turn to the First Amendment issue.
This is a peculiar case. The underlying concern of Tool Box (and the majority opinion) seems to be that the company was denied a building permit because of the mayor’s disapproval of its proposed expressive conduct — nude dancing. But Tool Box has not challenged the building-permit rejection on the ground that the specific official decision violated its First Amendment rights. Perhaps it believes that the City could successfully defend against such a claim, since the City apparently allowed Tool Box to locate its establishment at another location in town, and because it makes sense that the presence of a nude-dancing establishment could hinder the successful development of the Commercial Park.
It is also noteworthy that on appeal Tool Box does not challenge the Covenants under the four-part test of United States v. O’Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Courts use this test when someone claims that application of a law has infringed on the person’s freedom of speech, but “the governmental purpose in enacting the [law] is unrelated to the suppression of expression.” City of Erie v. Pap’s A.M., 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). A law passes muster under O’Brien if (1) the law “is within the constitutional power of the government to enact,” Pap’s A.M., 529 U.S. at 296, 120 S.Ct. 1382; (2) the law “furthers an important or substantial government interest,” id.; (3) “the government interest is unrelated to the suppression of free expression,” id. at 301, 120 S.Ct. 1382; and (4) “the restriction is no greater than is essential to the furtherance of the government interest,” id. For example, the Supreme Court has employed the O’Brien test to reject a Vietnam War protester’s challenge to the law prohibiting the burning of draft cards, O’Brien, 391 U.S. at 382, 88 S.Ct. 1673, and to reject a nude-dancing establishment’s challenge to a law banning all public nudity. Pap’s A.M., 529 U.S. at 296-302, 120 S.Ct. 1382. The district court found that the Covenants satisfy the O’Brien test.
Nor does Tool Box challenge the Covenants as a time, place, and manner restriction on speech. Because the Covenants were used to prohibit a nude-dancing establishment, they might be characterized as a law that, while not outright banning such establishments from the City, excludes them from a particular portion of town — the Commercial Park. Content-neutral time, place, and manner restrictions are constitutional if “they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication.” City of Renton v. Playtime Theatres, 475 U.S. 41, 47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). The Supreme Court has held that city ordinances limiting the locations of adult-film theatres for the purpose of avoiding their secondary effects (effects which can be summarized as urban blight, see id. at 47-51, 106 S.Ct. 925), rather than being aimed at the content of the films, are content-neutral, id. at 47-49, 106 S.Ct. 925, and can be constitutional as time, place, and manner restrictions. Id. Under Supreme Court precedents, I would think that a time, place, and manner challenge here would fail, particularly given the availability of other sites within the City for nude-dancing establishments. In any event, that issue is not before us.
My chief purpose in reviewing the avenues Tool Box has not pursued — (1) an as- *1183 applied challenge to the merits of the specific action taken against it, (2) an O’Brien challenge to the Covenants, and (3) a time, place, and manner challenge to the Covenants — is to emphasize that Tool Box is not without weapons (or shields) to protect against incursions on First Amendment rights. Yet it limits itself to a claim that the Covenants are too vague to withstand First Amendment scrutiny.
To understand why this claim fails, it is necessary to examine why a licensing law’s vagueness can be important to First Amendment interests. The Supreme Court’s most extensive exposition of the matter appears in its most expansive vagueness ruling in this context. City of Lakeiuood v. Plain Dealer Publ’g Co., 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988), a 4-3 decision written by Justice Brennan, struck down a municipal ordinance governing the placement of newspaper racks on city property. The Court said, “[I]n the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.” Id. at 757, 108 S.Ct. 2138. It then noted two “identifiable risks to free expression” engendered by vagueness.
First, the mere existence of the li-censor’s unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused.... Only standards limiting the licensor’s discretion will eliminate this danger by adding an element of certainty fatal to self-censorship.
Id. at 757-58, 108 S.Ct. 2138.
The second risk arises because vagueness in a law increases the difficulty of determining whether a particular application of the law was the “licensor’s legitimate denial of a permit” or the licensor’s “illegitimate abuse of censorial power.” Id. at 758, 108 S.Ct. 2138.
Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech. Without these guideposts, post hoc rationalizations by the licensing official and the use of shifting or illegitimate criteria are far too easy, making it difficult for courts to determine in any particular case whether the licensor is permitting favorable, and suppressing unfavorable, expression.... In sum, without standards to fetter the li-censor’s discretion, the difficulties of proof and the case-by-case nature of “as-applied” challenges render the licensor’s action in large measure effectively unre-viewable.
Id. at 758-59, 108 S.Ct. 2138.
Although these risks are theoretically present in any vague licensing law, the Lakewood Court recognized that protection of First Anendment freedoms does not require permitting vagueness challenges to all licensing laws. The Court wrote that its discussion of the problems generated by vague licensing laws “is not to say that the press or a speaker may challenge as censorship any law involving discretion to which it is subject. The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.” Id. at 759, 108 S.Ct. 2138. Examples of such laws are laws governing charity solicitation, parade permits, film censorship, and regulation of handbills, leaflets, or sound trucks. Id. at 756 n. 6, 108 S.Ct. 2138.
The Court later described laws that do not have the requisite “nexus to expression or to conduct commonly associated with expression”:
*1184 In contrast to the type of law at issue in this case, laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship.
Id. at 760-61, 108 S.Ct. 2138.[1] Of particular interest to the case before us, the Lakewood Court provided a specific illustration of a licensing law not subject to a vagueness challenge:
For example, a law requiring building permits is rarely effective as a means of censorship. To be sure, on rare occasion an opportunity for censorship will exist, such as when an unpopular newspaper seeks to build a new plant. But such laws provide too blunt a censorship instrument to warrant judicial intervention prior to an allegation of actual misuse. And if such charges are made, the general application of the statute to areas unrelated to expression will provide the courts a yardstick with which to measure the licensor’s occasional speech-related decision.
486 U.S. at 761, 108 S.Ct. 2188.
Thus, the Covenants lack the requisite nexus and are exempt from a First Amendment vagueness challenge. They constitute a law of “general application,” id. at 760, 108 S.Ct. 2138; they apply to every business that seeks to locate in the Commercial Park. The Covenants are “not aimed at conduct commonly associated with expression,” id. at 760-61, 108 S.Ct. 2138; they are aimed generally at all features of a business that are conducive, or detrimental, to development of a vigorous center of business development. Indeed, Tool Box concedes in its opening brief “that the covenants themselves were [not] designed to prevent [it] from conducting expressive activities.” Aplt. Br. at 16.
Nor are there any provisions in the Covenants that “permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken.” Lakewood, 486 U.S. at 761, 108 S.Ct. 2138. Perhaps one could say that the Covenants are vague enough that they could be used to deny a license (a building permit) because of ongoing or anticipated expression. But that is not what the Lakewood Court meant by the quoted language. After all, the Court was describing the type of licensing law for which vagueness may pose a particular threat to First Amendment interests and which is therefore subject to challenge for being vague. The Court’s discussion would have served no purpose if a law is subject to vagueness review whenever it is too vague. Indeed, the Court explicitly excluded from such review a vague building-permit law, even though the law’s vagueness could enable the city to censor “an unpopular newspaper seek[ing] to build a new plant.” Id. at 761, 108 S.Ct. 2138. The Court reasoned that an as-applied challenge would protect First Amendment rights adequately in such an instance. Hence, when the Court refers to licensing laws that “permit” decisions to be made on the basis of expression, it must be referring to laws that by their explicit language affirmatively permit expression-based decisions. There is no such language in the Covenants.
*1185 Moreover, the Covenants possess precisely the characteristic referred to in Lakewood as making as-applied First Amendment review effective. The Court wrote that if there is a charge of misuse of a law requiring building permits, then “the general application of the statute in areas unrelated to expression will provide the courts a yardstick with which to measure the licensor’s occasional speech-related decision,” id. at 761, 108 S.Ct. 2138, thereby making a vagueness challenge unnecessary for the protection of First Amendment rights. Here, that is just what happened. The City attorney, applying standards that had been imposed during the history of the Commercial Park, informed Tool Box that the Covenants would not pose an obstacle to its locating within the park. Consequently, it was undeniable that the reason for the mayor’s rejection of Tool Box was that it was a nude-dancing establishment. The only remaining issue was whether that denial was for the improper purpose of stifling expression protected by the First Amendment or for the “content-neutral” purpose of limiting the secondary effects of such a business on the surrounding park. There was no significant obstacle preventing Tool Box from bringing an as-applied challenge to the mayor’s decision; it simply chose not to.
Because I cannot join in reversal here, I must respectfully dissent.

. I should note that licensing laws subject to challenge for vagueness are also subject to challenge for not setting time restrictions for decisionmaking, since “failure to place limitations on the time within which a censorship board decisionmaker must malte a determination of obscenity is a species of unbridled discretion.” FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Presumably, licensing laws not subject to vagueness challenge are likewise not subject to challenge for failure to set time limits for the review process.